No. 22-1862

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

————————————

ANTHONY D. GULLUNI,

District Attorney for Hampden County, in his official capacity,

Plaintiff-Appellant,

v.

JOSHUA S. LEVY,

Acting U.S. Attorney for the District of Massachusetts,

Defendant-Appellee.

————————————

On Appeal from the United States District Court
for the District of Massachusetts

————————————

**BRIEF FOR APPELLEE**

————————————

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney
General*

JOSHUA S. LEVY
*Acting United States Attorney*

DANIEL TENNY
MICHAEL SHIH
*Attorneys, Appellate Staff
Civil Division, Room 7268
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 353-6880*

# TABLE OF CONTENTS

**Page**

INTRODUCTION..................................................................................................... 1

STATEMENT OF JURISDICTION ......................................................................... 3

STATEMENT OF THE ISSUE ................................................................................ 5

STATEMENT OF THE CASE ................................................................................. 5

    A.    Statutory and Regulatory Background ....................................................... 5

    B.    Factual Background.................................................................................... 6

    C.    Prior Proceedings ..................................................................................... 9

SUMMARY OF ARGUMENT .............................................................................. 11

STANDARD OF REVIEW .................................................................................... 13

ARGUMENT .......................................................................................................... 14

The District Court Correctly Determined That The Denial Of The *Touhy*
Request Was Not Arbitrary Or Capricious............................................................. 14

    A.    The U.S. Attorney Reasonably Declined To Provide The
            Requested Records In Light Of The Government's Then-Pending
            Enforcement Matter................................................................................. 14

            1.    Disclosure of the requested documents would have
                   revealed records compiled for law-enforcement purposes
                   and interfered with the pending enforcement matter. .................. 16

            2.    Disclosure of the requested documents would have
                   revealed the mental impressions of DOJ's litigation staff. ........... 18

    B.    Plaintiff's Contrary Arguments Lack Merit............................................... 19

            1.    The district court applied the correct standard of review............. 19

2.    The district court correctly concluded that the denial of plaintiff's *Touhy* request was reasonable. ......................................... 23

CONCLUSION ............................................................................................... 28

CERTIFICATE OF COMPLIANCE

SUPPLEMENTAL ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                          **Page(s)**

*Bamberg v. KPMG, LLP,*
   219 F.R.D. 33 (D. Mass. 2003) ........................................................................ 24

*Black v. Sheraton Corp. of Am.,*
   564 F.2d 531 (D.C. Cir. 1977) .......................................................................... 23

*Blanca Tel. Co. v. FCC,*
   991 F.3d 1097 (10th Cir. 2021) ........................................................................ 19

*Brady v. Maryland,*
   373 U.S. 83 (1963) ........................................................................................... 20

*Cabral v. DOJ,*
   587 F.3d 13 (1st Cir. 2009) .............................................................................. 13

*Camp v. Pitts,*
   411 U.S. 138 (1973) ......................................................................................... 27

*Chrysler Corp. v. Brown,*
   441 U.S. 281 (1979) ........................................................................................... 5

*COMSAT Corp. v. National Sci. Found.,*
   190 F.3d 269 (4th Cir. 1999) ............................................................................ 26

*FCC v. Prometheus Radio Project,*
   141 S. Ct. 1150 (2021) ..................................................................................... 13

*Federal Trade Comm'n v. Grolier Inc.,*
   462 U.S. 19 (1983) ........................................................................................... 25

*Giglio v. United States,*
   405 U.S. 150 (1972) ......................................................................................... 20

*Hickman v. Taylor,*
   329 U.S. 495 (1947) ......................................................................................... 24

*Kyles v. Whitley,*
   514 U.S. 419 (1995) .......................................................................................... 20

*Puerto Rico v. United States,*
   490 F.3d 50 (1st Cir. 2007) ................................................. 13, 21, 23, 26, 27

*Roviaro v. United States*,
   353 U.S. 53 (1957) ................................................................ 23

*San Juan Dupont Plaza Hotel Fire Litig., In re*,
   859 F.2d 1007 (1st Cir. 1988) ...................................... 12, 18, 24

*Strickler v. Greene*,
   527 U.S. 263 (1999) ............................................................. 20

*United States ex rel. Touhy v. Ragen*,
   340 U.S. 462 (1951) ....................................................... 1-2, 5

**Statutes:**

Administrative Procedure Act (APA):
   5 U.S.C. § 701 *et seq.* ....................................................... 2, 3
      5 U.S.C. § 706 ............................................................... 27
      5 U.S.C. § 706(2)(B) ........................................................ 19

5 U.S.C. § 301 ..................................................................... 5

28 U.S.C. § 1291 .................................................................. 3

28 U.S.C. § 1331 .................................................................. 3

34 U.S.C. § 12601 ........................................................ 7, 9, 14, 23

34 U.S.C. § 12601(a) ............................................................ 1, 7

34 U.S.C. § 12601(b) ............................................................... 7

**Regulations:**

28 C.F.R. § 16.21 *et seq.* ..................................................... 1, 5
   28 C.F.R. § 16.22(a) ........................................................... 6
   28 C.F.R. § 16.22(b) ........................................................... 6
   28 C.F.R. § 16.22(c)-(d) ....................................................... 6
   28 C.F.R. § 16.24(b)(1) ........................................................ 6
   28 C.F.R. § 16.24(b)(2) ..................................................... 6, 26
   28 C.F.R. § 16.24(b)(3) ........................................................ 6
   28 C.F.R. § 16.26(a) ........................................................... 6
   28 C.F.R. § 16.26(b) ........................................................... 6

iv

28 C.F.R. § 16.26(b)(5) ............................................................... 16

28 C.F.R. § 16.26(c)-(d) ........................................................ 6, 26

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ............................................................. 3

Fed. R. App. P. 43(c)(2) ............................................................... 9

Fed. R. Evid. 201(b)(2) ............................................................... 4

**Other Authorities:**

Civil Rights Div., DOJ, *The Civil Rights Division's Pattern and Practice
   Police Reform Work: 1994-Present* (Jan. 2017),
   https://perma.cc/K4LE-57Q7 ........................................... 14, 16, 19

Order, *United States v. Springfield, Mass. Police Dep't*,
   No. 3:22-cv-30043 (D. Mass. Apr. 29, 2022) ................................. 8

8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
   § 2024 (3d ed.), Westlaw (database updated Apr. 2023) ............................ 25

## INTRODUCTION

In July 2020, the U.S. Department of Justice (DOJ) issued a report summarizing the findings of its investigation into the Narcotics Bureau of the Springfield, Massachusetts, Police Department (SPD or Police Department). DOJ initiated that investigation pursuant to a federal statute prohibiting "any governmental authority" from "engag[ing] in a pattern or practice of conduct . . . that deprives persons of rights, privileges, or immunities secured . . . by the Constitution or laws of the United States." 34 U.S.C. § 12601(a). The report stated that DOJ had uncovered "substantial evidence" that Police Department officers had "made false [use-of-force] reports that were inconsistent with other available evidence." Dkt. No. 21-2, at 16. After releasing the report, DOJ engaged in negotiations with the City of Springfield (City) and the Police Department that culminated in a consent decree entered by a federal district court nearly two years later.

Plaintiff is the District Attorney of Hampden County (of which the City of Springfield is the county seat). After the findings report was published but before DOJ's negotiations with the City of Springfield and its Police Department had concluded, plaintiff asked DOJ for all Police Department reports supporting DOJ's specific and general findings of misconduct. The U.S. Attorney for the District of Massachusetts denied that request pursuant to DOJ regulations governing such disclosures. 28 C.F.R. § 16.21 *et seq.* These regulations are known as *Touhy* regulations, after the Supreme Court case confirming their validity. *See United States ex*

*rel. Touhy v. Ragen*, 340 U.S. 462 (1951). As the U.S. Attorney explained in the denial letter, the identification of documents DOJ investigators had deemed relevant in an ongoing enforcement matter would disclose information both protected by the law-enforcement privilege and subject to work-product protection. Plaintiff sued the U.S. Attorney in federal district court under the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* The court properly concluded that the U.S. Attorney's decision was not arbitrary or capricious.

Plaintiff's primary contention on appeal is that his office may need to disclose some of the underlying Police Department documents to fulfill its constitutional obligations to criminal defendants. But plaintiff has at all times had direct access to those documents through the Police Department itself. Furthermore, when the request was submitted, DOJ's enforcement matter against the City and Police Department was in pre-litigation negotiations that could have led to adversarial litigation. DOJ reasonably declined to reveal its investigative and thought processes as to that ongoing matter.

Now that the consent decree has been entered and it is clear that no adversarial litigation will ensue, DOJ has sent a letter to the City with additional information related to the findings report. The adequacy of that letter is not before the Court in this challenge to the denial of plaintiff's 2020 *Touhy* request, but the letter is relevant because it renders part of plaintiff's claim moot. The letter also illustrates the federal

government's willingness to cooperate with other law-enforcement agencies when doing so would not compromise the United States' interest in enforcing federal law.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 over plaintiff's APA claim, *see* 5 U.S.C. § 701 *et seq.* On September 6, 2022, the district court granted summary judgment to the federal government and entered final judgment against plaintiff. Add. 39. On November 3, 2022, plaintiff timely appealed. Dkt. No. 34; *see* Fed. R. App. P. 4(a)(1)(B). This Court has appellate jurisdiction under 28 U.S.C. § 1291.

Plaintiff's claim is partially moot, however, with respect to documents related to certain incidents discussed in the DOJ findings report that DOJ has now specifically identified. On June 2, 2023, DOJ sent a letter to the City of Springfield providing additional information, which confirmed that the City's prior identification of 19 specific incidents was "correct," identified three additional incidents that the City could not identify, and identified 14 additional incidents underlying another specific finding. Letter from Paul Killebrew, Civil Rights Div., DOJ, to John Payne,

City Solicitor, City of Springfield (June 2, 2023).[1]  In each case, the letter identified the documents underlying each incident.  *See* Supp. Add. 13-16.[2]

The district court had concluded that the case was not moot, relying on the inadequacy of information about a few specific incidents and the lack of express confirmation of the City's understanding of other specific incidents.  Add. 34-35.  The June 2 letter now ensures that plaintiff is aware of all reports in the first category of documents requested—that is, all Police Department reports "determined [by DOJ] as examples where [Springfield] Narcotics Bureau officers falsified reports to disguise or hide their use of force."  Supp. Add. 8.  The case is therefore moot with respect to that category of documents.  There remains a live controversy over documents underlying DOJ's more general conclusions, which the letter did not identify.  *See* Add. 34; Supp. Add. 12 (noting that DOJ has "not endeavored to identify particular SPD documents corresponding to" certain "findings about SPD's practices in general").

---

[1] This letter is reproduced in the supplemental addendum to this brief.  The letter is properly subject to judicial notice because the fact of the letter "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  The letter is properly considered on appeal because it has jurisdictional significance.

[2] Citations in this format refer to the supplemental addendum to this brief.

## STATEMENT OF THE ISSUE

Plaintiff submitted a request for information developed during a federal investigation pursuant to DOJ's regulations governing disclosure of documents or testimony in connection with litigation in which the United States is not a party. 28 C.F.R. § 16.21 *et seq.* The question presented is whether the U.S. Attorney reasonably denied that request because it was made while the federal government was actively considering enforcement action based on that investigation.

## STATEMENT OF THE CASE

### A.     Statutory and Regulatory Background

The U.S. Department of Justice has issued rules under 5 U.S.C. § 301—known as the federal "housekeeping statute," *see Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979)—that allow individuals to request documents or testimony in connection with litigation in which the United States is not a party. Such rules are known as *Touhy* regulations, after the Supreme Court decision confirming their validity. *See generally United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

DOJ's *Touhy* regulations prohibit current or former DOJ employees from

produc[ing] any material contained in the files of the Department, or disclos[ing] any information relating to or based upon material contained in the files of the Department, or disclos[ing] any information or produce any material acquired as part of the performance of that person's official duties . . . without prior approval of the proper Department official.

28 C.F.R. § 16.22(a).  In state-court proceedings where the United States is not a party, the "proper Department official" is the U.S. Attorney for the judicial district where discovery is being sought.  *Id.* § 16.22(a), (b).  The requester must supply the appropriate U.S. Attorney with a summary of the testimony or information requested and must explain "its relevance to the proceeding."  *Id.* § 16.22(c)-(d).

After consulting with interested DOJ components, the U.S. Attorney "may" authorize disclosure if:

(1)  the interested components do not object, 28 C.F.R. § 16.24(b)(1);

(2)  the disclosure, "in the judgment of the [U.S. Attorney], is appropriate" in light of certain factors, such as whether disclosure is "appropriate under the relevant substantive law concerning privilege," *id.* §§ 16.24(b)(2), 16.26(a); and

(3)  disclosure is not foreclosed by the nonexclusive list of disclosure bars set forth by the regulations, *id.* §§ 16.24(b)(3), 16.26(b) (prohibiting disclosure, for example, of information subject to the law-enforcement privilege or to work-product protections).

The U.S. Attorney may still refuse to authorize disclosure even when none of the disclosure bars listed in § 16.26(b) is present if, "in [the U.S. Attorney's] judgment, after considering [§ 16.26(a)], disclosure is unwarranted."  *See id.* § 16.26(c)-(d).

### B. Factual Background

**1.** This appeal involves a *Touhy* request for documents relating to a DOJ investigation of the Narcotics Bureau of the Springfield, Massachusetts, Police

Department.  Add. 26.  DOJ conducted the investigation pursuant to 34 U.S.C.

§ 12601, which forbids "any governmental authority" from "engag[ing] in a pattern or

practice of conduct by law enforcement officers . . . that deprives persons of rights,

privileges, or immunities secured . . . by the Constitution or laws of the United

States." 34 U.S.C. § 12601(a).  Under that statute, DOJ may initiate a "civil action [to]

obtain appropriate equitable and declaratory relief to eliminate the pattern or

practice." *Id.* § 12601(b).

During the investigation, DOJ reviewed over 114,000 pages of documents that

the Police Department shared with DOJ.  These documents included SPD's policies

and procedures, training materials related to the use of force and accountability, SPD

internal-affairs protocols and investigation reports, personnel files, and officer reports

arising from specific use-of-force incidents.  Dkt. No. 21-2, at 7.  DOJ also

interviewed SPD officers, City of Springfield officials, and community members.  *Id.*

In July 2020, DOJ issued a report summarizing its findings.  The report found

"reasonable cause to believe that Narcotics Bureau officers engage in a pattern or

practice of excessive force in violation of the Fourth Amendment" that is "directly

attributable to systemic deficiencies in policies, accountability systems, and training."

Dkt. No. 21-2, at 2.  The report also found "substantial evidence that[] . . . officers

made false [use-of-force] reports that were inconsistent with other available

evidence." *Id.* at 16.

Although DOJ issued the report in 2020, DOJ did not terminate its enforcement efforts regarding the Police Department. To the contrary, DOJ began negotiating a resolution of its investigation with the City and the Police Department. Those efforts did not conclude until nearly two years later, when, in April 2022, a district court entered an order approving a negotiated consent decree between the parties. *See* Order, *United States v. Springfield, Mass. Police Dep't*, No. 3:22-cv-30043 (D. Mass. Apr. 29, 2022).

**2.** Plaintiff is Anthony Gulluni, the District Attorney of Hampden County. In August 2020—shortly after the issuance of the findings report but nearly two years before the entry of the consent decree—plaintiff submitted a *Touhy* request for three categories of documents belonging to the Police Department that had been shared with DOJ during the investigation: (1) all SPD reports determined by DOJ to be examples of officers falsifying reports to disguise or hide their use of force; (2) all SPD reports determined by DOJ to reveal a pattern or practice of officers making false reports that were inconsistent with other evidence; and (3) all photographs, videos, and digital materials determined by DOJ to be inconsistent with SPD officers' reports. Add. 28; *see* Supp. Add. 4-5.

**3.** The U.S. Attorney for the District of Massachusetts denied the request for two independent reasons. Supp. Add. 8-9. First, the U.S. Attorney explained that "the documents sought are subject to the law enforcement privilege because they would reveal investigative records compiled in connection with an open and ongoing

civil investigation"—that is, DOJ's investigation of the Police Department pursuant to 34 U.S.C. § 12601.  Supp. Add. 9.  The U.S. Attorney therefore determined that "disclosure . . . would reveal records compiled for investigative purposes and would interfere with these ongoing law enforcement proceedings."  *Id.*  Second, the U.S. Attorney explained that the request implicated "the work product privilege" to the extent that it demanded information "reflect[ing] the thoughts and impressions of DOJ attorneys, paralegals, and investigators."  *Id.*

The U.S. Attorney acknowledged plaintiff's argument that he needed the requested information to comply with his constitutional disclosure obligations to unspecified criminal defendants.  Supp. Add. 9.  But in the U.S. Attorney's judgment, disclosure was unnecessary because all the requested documents "belong to and originated with" SPD.  *Id.*  Plaintiff could therefore obtain the documents in question directly "from SPD—a department with which [the Hampden County District Attorney] likely works daily."  *Id.*

## C.    Prior Proceedings

In April 2021—over a year before DOJ entered into a consent decree with the City and the Police Department—plaintiff filed this lawsuit in district court, alleging that the U.S. Attorney's 2020 denial of his *Touhy* request violated the APA.[3]

---

[3] Pursuant to Fed. R. App. P. 43(c)(2), Acting U.S. Attorney Joshua S. Levy should be automatically substituted as defendant-appellee in this appeal.

In July 2021, while plaintiff's APA lawsuit was pending, the City of Springfield sent a letter to plaintiff on behalf of the Police Department. Dkt. No. 21-1, at 6. The letter identified the SPD records provided to DOJ corresponding to nineteen specific incidents in the DOJ findings report. *Id.* at 8-16 (listing records corresponding to incidents numbered as 1-13, 16-18, and 21-23). The letter stated that SPD could not identify three other specific incidents discussed in the report, *id.* at 13-15 (discussing incidents numbered as 14, 15, and 20). Finally, the letter noted that SPD was unable to identify records related to DOJ's general finding of a pattern or practice of SPD narcotics officers "writ[ing] false or incomplete narratives that justify their uses of force." *Id.* at 15.

The district court granted summary judgment to the United States. At the outset, the court concluded that plaintiff's APA claim was not moot despite the Police Department's willingness to identify and provide certain requested documents directly to plaintiff. The court noted SPD's apparent inability to "identify the underlying events in four of the incidents" set forth in the City's letter, "which include both general and specific statements concerning officer misconduct." Add. 34. The court further noted that, with respect to the 19 specific incidents described in the DOJ findings report, "it remains unclear whether all the documentation relied upon by DOJ concerning those incidents has been provided" and whether "the incidents identified . . . are, in fact, those that DOJ relied upon in its report." Add. 34-35. As noted, DOJ recently sent a letter to the City addressing the specific incidents

identified by the district court, though the letter did not provide additional information regarding the report's general findings. *Supra* pp. 3-4; Supp. Add. 11-12.

On the merits, the court concluded that the U.S. Attorney "did not violate the APA in denying the [*Touhy*] request." Add. 35. The court emphasized that, in October 2020 (when the request was denied), DOJ and the Police Department were still in an adversarial relationship because the underlying enforcement matter was still pending. Add. 37. It was therefore not arbitrary or capricious for DOJ to withhold access to "the materials that formed the foundation of the resulting report" (which gave rise to the consent decree ultimately entered in April 2022). Add. 38. The court also emphasized that the request would have revealed the way DOJ "select[ed] . . . materials relied upon . . . in its report," the disclosure of which "would undoubtedly have yielded 'a glimpse' into [DOJ's] analysis" in preparing the case against the Police Department. Add. 36-37. Particularly given "the availability of the requested materials from SPD" and "the significant progress" the District Attorney "has already made in identifying th[os]e materials," the court concluded that DOJ's invocation of the work-product privilege was not arbitrary or capricious. Add. 37.

## SUMMARY OF ARGUMENT

**A.** The U.S. Attorney reasonably denied a *Touhy* request by plaintiff—a District Attorney—for information developed during a DOJ investigation while the underlying enforcement matter had not yet concluded. As the U.S. Attorney explained, disclosure would have revealed records compiled for law-enforcement

purposes and interfered with the pending investigation by laying bare the strengths and weaknesses of DOJ's case against the Police Department with which plaintiff regularly works. Disclosure would have also revealed information subject to the work product doctrine because it was "sorted and segregated" by "attorneys and their staffs . . . in anticipation of litigation." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988). And the burden on plaintiff of nondisclosure was comparatively slight because plaintiff could have obtained every document covered by the request—and indeed, every document disclosed to DOJ by the Springfield Police Department—from the Police Department itself. Given plaintiff's ability to satisfy his asserted disclosure obligations to criminal defendants by conducting his own review, the U.S. Attorney reasonably concluded that DOJ's interests outweighed plaintiff's desire to rely on the United States' pending civil rights enforcement matter—rather than plaintiff's own resources—to discharge plaintiff's own obligations.

**B.** Plaintiff faults the district court for applying the wrong standard of review. Plaintiff asserts that, because he and his office might be constitutionally required to disclose some of the underlying documents to certain criminal defendants, his challenge to DOJ's *Touhy* denial is a constitutional one necessitating de novo review. But plaintiff's claim does not turn on the resolution of any constitutional question because the *Touhy* denial does not prevent plaintiff from discharging his obligations. As this Court has held, a challenge to a *Touhy* request that implicates constitutional concerns is still an arbitrary-and-capricious challenge under the APA subject to

12

ordinary reasonableness review. *See Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007).

Plaintiff also contests the U.S. Attorney's invocation of the law-enforcement privilege and the work-product doctrine. As the district court explained, however, the U.S. Attorney's reliance on those doctrines was entirely reasonable. In any event, the key question for *Touhy* purposes is whether DOJ's policy decision to withhold information was reasonable. Because it was not arbitrary or capricious for the U.S. Attorney to refuse to disclose documents arising from a pending investigation while the underlying enforcement matter was ongoing, the district court's judgment should be affirmed.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's order dismissing an APA suit challenging an agency's response to a *Touhy* request." *Cabral v. DOJ*, 587 F.3d 13, 23 (1st Cir. 2009). The agency's reasoning is reviewed under the APA's "arbitrary and capricious standard of review." *Id.* Under that deferential standard, a denial will be sustained if it is both reasonable and reasonably explained. *See, e.g.*, *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021).

**ARGUMENT**

**THE DISTRICT COURT CORRECTLY DETERMINED THAT THE DENIAL OF THE
*TOUHY* REQUEST WAS NOT ARBITRARY OR CAPRICIOUS.**

This appeal involves an APA claim challenging a single agency action: the U.S.
Attorney's decision in October 2020 to deny a *Touhy* request for information
developed in connection with a pending DOJ investigation. As the district court
explained, that decision was both reasonable and reasonably explained. The judgment
should therefore be affirmed.

### A.  The U.S. Attorney Reasonably Declined To Provide The Requested Records In Light Of The Government's Then-Pending Enforcement Matter.

Plaintiff's *Touhy* request is premised on a DOJ investigation of the Springfield
Police Department to determine whether the Police Department was engaged in a
pattern or practice of depriving persons of their constitutional rights. *See* 34 U.S.C.
§ 12601. During that investigation, DOJ produced a report in 2020 making findings
regarding the operations of the SPD. DOJ did not, however, file a complaint in court
at that time, and the report thus did not represent the culmination of DOJ's efforts
but rather the beginning of a new phase of negotiation with the City in the hope of
avoiding the need for litigation. *See* Civil Rights Div., DOJ, *The Civil Rights Division's
Pattern and Practice Police Reform Work: 1994-Present* 17 (Jan. 2017),
https://perma.cc/K4LE-57Q7 (*Pattern and Practice*) (describing how a findings letter

marks a transition to a negotiating phase of DOJ's inquiry). Only in 2022—nearly two years later—did the parties execute a consent decree.

This case concerns a request for information relating to DOJ's findings in the 2020 report. Plaintiff submitted the request after the issuance of the report but well before the parties concluded the consent decree, and thus while the federal government and the City were still in a potentially adversarial posture. In particular, plaintiff sought three categories of information. First, plaintiff requested all SPD reports "determined" by DOJ "as examples where [SPD] officers falsified reports to disguise or hide their use of force." Supp. Add. 4. Second, plaintiff requested all SPD reports "determined" by DOJ as revealing a pattern or practice of officers making false reports that were inconsistent with other evidence. Supp. Add. 5. Third, plaintiff requested copies of "all photographs[] . . . videos[, and digital] material[s] determined" by DOJ "as inconsistent with any [SPD] officers' reports." *Id.*

The request sought only documents that had originally been provided by the Springfield Police Department; accordingly, the only information requested that was uniquely available from the federal government was the government's impressions of those documents. Thus, plaintiff's request was not for documents—which would have been available from the SPD without the federal government's involvement—but rather for information about the federal government's assessment of those documents. The U.S. Attorney properly concluded that this information was covered

15

by the law-enforcement privilege and the work-product doctrine and reasonably

denied the request on account of the ongoing enforcement matter.

> **1.    Disclosure of the requested documents would have revealed records compiled for law-enforcement purposes and interfered with the pending enforcement matter.**

First, the U.S. Attorney explained that, under DOJ's *Touhy* regulations,

disclosure is not permissible when it would "reveal investigatory records compiled for

law enforcement purposes, and would interfere with enforcement proceedings or

disclose investigative techniques and procedures the effectiveness of which would

thereby be impaired."  Supp. Add. 7 (quoting 28 C.F.R. § 16.26(b)(5)).  The requested

records plainly fall into this category.  The documents in question were compiled by

DOJ as part of its investigation of whether the Springfield Police Department violated

federal law.  Yet plaintiff sought disclosure of all documents "determined" by DOJ to

support not only specific findings in its findings report—which information the City

now has in its possession, *see supra* pp. 3-4—but also general findings relating to the

existence of a pattern or practice of unconstitutional behavior by SPD officers, Supp.

Add. 4-5.

DOJ was, at the time of plaintiff's request, in the midst of determining whether

it could reach a negotiated resolution of its concerns about the Police Department or

whether it instead would need to institute a civil action.  *See Pattern and Practice* 18-19

(describing negotiation process that "involves lawyers and takes place against a

backdrop of potential legal remedies").  It was therefore reasonable for the U.S.

Attorney to conclude that releasing the documents undergirding its specific and

general findings would reveal records compiled for law-enforcement purposes—the

disclosure of which could allow a defendant to evaluate the strengths and weaknesses

of DOJ's case during the sensitive negotiation process.

The U.S. Attorney also reasonably concluded that DOJ's institutional interest

in its enforcement of § 12601 outweighed plaintiff's asserted need for the documents.

The U.S. Attorney acknowledged that plaintiff had asked for the documents to help

plaintiff in his efforts to satisfy constitutional disclosure obligations to criminal

defendants.  Supp. Add. 9.  But the U.S. Attorney noted that plaintiff could have

obtained every document covered by the request—and indeed, every document

disclosed to DOJ by the Springfield Police Department—from SPD, "a department

with which [plaintiff's] office likely works daily."  *Id.*  Upon receiving those

documents, plaintiff's office could have reviewed them itself.  Given plaintiff's ability

to satisfy those obligations by conducting his own review, the U.S. Attorney

reasonably concluded that DOJ's interests outweighed plaintiff's desire to rely on the

federal government's civil rights investigation, rather than its own resources, to

discharge plaintiff's constitutional disclosure obligations.

**2.      Disclosure of the requested documents would have revealed the mental impressions of DOJ's litigation staff.**

Second, as the U.S. Attorney further explained, DOJ's *Touhy* regulations prohibit disclosure of documents that would "reveal the internal deliberation process within the Department of Justice" or "reveal attorney work product." Supp. Add. 8. The requested documents plainly fall within these categories as well. Plaintiff did not ask for all documents provided to DOJ by the Police Department—which documents, as noted, plaintiff could easily have obtained directly from SPD itself. Instead, plaintiff only asked for documents "determined" by DOJ as examples of the conduct discussed in the findings report. Supp. Add. 4-5.

In other words, plaintiff sought information "sorted and segregated" by "attorneys and their staffs . . . in anticipation of litigation." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988). Disclosing such information would have granted "insight" into DOJ's "understanding of [its] case," *id.*, and exposed "the thoughts and impressions of DOJ attorneys, paralegals, and investigators" to scrutiny, Supp. Add. 9. "Forced production" of "the selection process's yield . . . consequently implicates the work product rule to an extent." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1018-19. And because plaintiff could obtain the requested documents from SPD, the only thing plaintiff was seeking was information about the federal government's selection process.

18

The mental impressions that plaintiff sought were also plainly developed in contemplation of litigation. The findings report represents the beginning of a stage of negotiation and thus forms the predicate either for potential settlement or for adversarial litigation. Although litigation "is rare and not the preferred outcome," DOJ "is fully prepared to litigate pattern-or-practice cases when jurisdictions refuse to agree upon necessary reforms," *Pattern and Practice* 19, and DOJ has in fact litigated such cases in the past, *id.* at 18 (listing examples). The U.S. Attorney thus reasonably concluded that DOJ's interest in protecting the mental impressions of its litigation staff from disclosure outweighed plaintiff's need for disclosure. Supp. Add. 9.

## B. Plaintiff's Contrary Arguments Lack Merit.

### 1. The district court applied the correct standard of review.

At the threshold, plaintiff argues (Br. 12-17) that reversal is warranted because the district court applied the wrong standard of review. Plaintiff believes that, because he submitted his *Touhy* request to help him discharge his constitutional disclosure obligations to unspecified criminal defendants his office may be prosecuting, his claim arises under 5 U.S.C. § 706(2)(B) of the APA. That provision authorizes courts to "hold unlawful and set aside agency action[] . . . found to be[] . . . contrary to constitutional right." 5 U.S.C. § 706(2)(B). Agency action challenged under § 706(2)(B) is reviewed de novo. *See Blanca Tel. Co. v. FCC*, 991 F.3d 1097, 1110 (10th Cir. 2021).

19

The district court correctly rejected this argument.  As plaintiff acknowledges (Br. 13), the constitutional right at issue requires a prosecutor to disclose "evidence favorable to an accused upon request . . . irrespective of the good faith or bad faith of the prosecution," *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *see Giglio v. United States*, 405 U.S. 150, 154 (1972) (holding that disclosure "is the responsibility of the *prosecutor*" (emphasis added)).  To comply with these obligations, a "prosecutor has a duty to learn of any favorable evidence known to the others acting on the [prosecuting] government's behalf."  *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).  Plaintiff, the Hampden County District Attorney, prosecutes crimes on behalf of the Commonwealth of Massachusetts.  Plaintiff's concern is that he and his office might be required to disclose some of the material given to DOJ by the Springfield Police Department—itself part of the Commonwealth of Massachusetts—to certain criminal defendants under *Brady* and *Giglio*.  But the denial of plaintiff's *Touhy* request does not prevent plaintiff from discharging that obligation to any defendant because plaintiff already has access to the exact same material (which remains in the possession of the Police Department).  And plaintiff has made no argument that DOJ has any constitutional obligation to make any disclosure.

For these reasons, the plaintiff has not actually "brought a constitutional claim" against the United States.  Add. 33.  Plaintiff's claim is instead a run-of-the-mill claim that the U.S. Attorney acted arbitrarily or capriciously under the APA by denying his

20

*Touhy* request notwithstanding plaintiff's argument that disclosure would help him comply with his constitutional obligations. As the district court concluded, Add. 31, claims of this sort are evaluated under the arbitrary-and-capricious standard and must be rejected if the U.S. Attorney's decision was reasonable and reasonably explained (which it was, *see supra* pp. 14-19).

This Court's decision in *Puerto Rico v. United States*, 490 F.3d 50 (1st Cir. 2007), illustrates the point. There, Puerto Rico issued two subpoenas for information held by the Federal Bureau of Investigation (FBI). *Id.* at 54-55. The FBI refused to produce the requested information. *Id.* at 55-56. Puerto Rico argued that the FBI's refusal was unconstitutional because it encroached on "its sovereign authority to investigate and prosecute its criminal laws." *Id.* at 67. But notwithstanding the constitutional dimensions of Puerto Rico's arguments, this Court treated Puerto Rico's claim as an ordinary arbitrary-and-capricious claim subject to the familiar reasonableness standard. *Id.* at 61.

Plaintiff disputes (Br. 10-11) the district court's additional conclusion that plaintiff lacks standing to assert the constitutional rights of criminal defendants whom plaintiff is prosecuting. *See* Add. 33 ("[W]hile the constitutional rights of defendants prosecuted by [plaintiff] may be implicated pursuant to the disclosure requirements of *Brady*, those rights do not belong to the plaintiff presently before the Court." (citation omitted)). But whether or not plaintiff may assert the rights of such defendants, the standard of review for constitutional claims is inapplicable because neither the U.S.

Attorney's denial of plaintiff's *Touhy* request nor the district court's review of it turned on any contested issue of constitutional law.

That is not to say that plaintiff's constitutional obligations to criminal defendants were irrelevant to the disposition of the *Touhy* request, much less that DOJ is insensitive to the constitutional obligations of a fellow law-enforcement agency. To the contrary, the U.S. Attorney expressly acknowledged plaintiff's constitutional obligations as a factor that might support disclosure. Supp. Add. 9. The U.S. Attorney merely concluded that the benefits of providing DOJ's assistance to make it easier for plaintiff to identify documents already in the Commonwealth's possession that might be subject to mandatory disclosure in some hypothetical case was outweighed by the federal government's interest in withholding privileged information from a potential adversary in enforcement litigation that was being actively considered. It was the potential civil litigation that caused the U.S. Attorney to deny the *Touhy* request, and that denial was reasonable. Indeed, now that the parties are no longer adversaries in litigation, DOJ has provided additional information to the City. *See* Supp. Add. 11 ("With the Consent Decree in place and the parties working diligently to implement its terms, we are writing to provide your office with additional information relevant to those efforts.").[4]

---

[4] As noted, *supra* pp. 3-4, this moots in substantial part plaintiff's claims in this case, though it does not render the case entirely moot.

22

## 2.    The district court correctly concluded that the denial of plaintiff's *Touhy* request was reasonable.

On the merits, plaintiff's objections to the U.S. Attorney's reasoning miss the mark under any standard of review.

With respect to the law-enforcement privilege, plaintiff argues (Br. 30-33) that the privilege does not apply to the information he requested.  But as this Court has recognized, that privilege is "rooted in common sense as well as common law."  *Puerto Rico*, 490 F.3d at 62 (quoting *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 542 (D.C. Cir. 1977)).  And its purpose "is the furtherance and protection of the public interest in effective law enforcement."  *Roviaro v. United States*, 353 U.S. 53, 59 (1957); *accord Puerto Rico*, 490 F.3d at 62-63 ("[L]aw enforcement operations cannot be effective if conducted in full public view . . . ." (quoting *Black*, 564 F.2d at 542)).  Especially given the flexible nature of this privilege, the U.S. Attorney properly declined to disclose documents that could reveal the strengths and weaknesses of DOJ's case against SPD under 34 U.S.C. § 12601—which had not yet concluded when the request was denied, and which could have resulted in litigation if DOJ and SPD had not eventually concluded a consent decree.

With respect to the work-product doctrine, plaintiff argues (Br. 19-21) that the requested documents are not entitled to work-product protection because they were prepared by the Police Department, because they predated DOJ's investigation of SPD, and because such reports are routinely disclosed to criminal defendants.  But the

23

*Touhy* request did not seek disclosure of all such documents. Plaintiff, a local prosecutor, cannot seriously contend that the District Attorney's office needs to submit a *Touhy* request to the federal government to obtain documents in the possession of the local police department. Rather, the purpose of the *Touhy* request was to obtain information about DOJ's assessment of the documents to which both DOJ and plaintiff had access—and, in particular, the mental impressions of DOJ staff upon reviewing and analyzing those documents. At a minimum, and as plaintiff acknowledges, "the identification and selection of documents" qualifies as "ordinary work product." Br. 26 (quoting *Bamberg v. KPMG, LLP*, 219 F.R.D. 33, 36 (D. Mass. 2003)); *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1018-19. Here, that is all that would be revealed, since the underlying documents are all in the Police Department's possession and are already available to plaintiff. The work-product doctrine was created precisely to address the situation where the underlying evidence is available to an opposing party and that party seeks to discover another lawyer's analysis instead of analyzing the evidence for itself. *See Hickman v. Taylor*, 329 U.S. 495, 509 (1947) ("For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking.").

Plaintiff responds (Br. 20-21) that the work-product doctrine does not apply because the subject of DOJ's investigation was the Police Department and not plaintiff. But the doctrine covers materials "prepared for *any* litigation or trial," as the

24

Supreme Court has explained. *Federal Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 25 (1983) (emphasis in original); *see* 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 (3d ed.), Westlaw (database updated Apr. 2023) ("[P]rotection exists with respect to subsequent litigation whether or not the latter case was 'related' to the case for which the material was originally prepared."). It would be especially anomalous to suggest that the federal government must turn over its work product regarding a potential enforcement action to an attorney's office that regularly works with the potential subject of that enforcement action.

Plaintiff also asserts (Br. 27-29) that DOJ waived work-product protections by publishing the 2020 findings report. But the findings report did not itself disclose which particular SPD documents supported a particular finding; if it had, plaintiff's *Touhy* request would have been unnecessary. And the report's disclosure of the conclusions that DOJ drew from the evidence does not waive the privilege with regard to DOJ's analysis of that evidence. On plaintiff's theory, the filing of a complaint—which reveals numerous aspects of an attorney's mental impressions of the strong points of a case and the legal and factual inferences that can be drawn— would entitle the defendant to the plaintiff's attorney's analysis regarding why the statements in the complaint were justified. That result would turn the work-product doctrine on its head.

Plaintiff contends (Br. 33-34) that, even if the law-enforcement privilege or the work-product doctrine applied, DOJ should have concluded that his need for the

25

requested information outweighed any interest DOJ might have in nondisclosure. As noted, however, plaintiff's need for the requested documents was minimal because he could have obtained all of them (and more) from the Police Department. On the other side of the ledger, DOJ was contemplating adversarial litigation against the City, and, at a minimum, it was not arbitrary and capricious to decline to provide a roadmap of its thinking regarding the core issues in that potential lawsuit. Given that plaintiff could discharge his constitutional obligations simply by procuring the documents from SPD and reviewing them independently, the U.S. Attorney reasonably determined that disclosure was unwarranted.

Finally, although the U.S. Attorney properly invoked both the law-enforcement privilege and the work-product doctrine, plaintiff's arguments would fail even if those doctrines were not applicable as a technical matter. Plaintiff's arguments overlook the fact that DOJ's *Touhy* regulations only authorize disclosure if the U.S. Attorney believes such disclosure to be "appropriate" under the circumstances. 28 C.F.R. § 16.24(b)(2); *see also id.* § 16.26(c)-(d) (explaining that, even when disclosure is not expressly barred by the *Touhy* regulations, the relevant decisionmaker may still refuse to authorize disclosure if, "in that person's judgment, . . . disclosure is unwarranted"). As this Court has recognized, DOJ's "choice of whether or not to comply" with a *Touhy* request "is essentially a policy decision about the best use of the agency's resources." *Puerto Rico*, 490 F.3d at 61 (quoting *COMSAT Corp. v. National Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999)). When a *Touhy* requester "seek[s] materials in an

26

action not otherwise properly in federal court, the United States has no independent obligation to turn over government materials regardless of whether they are privileged; at most, it must avoid action that is arbitrary and capricious." *Id.* at 73 (Boudin, C.J., concurring); *see id.* at 73-74 (Shadur, J., concurring) ("concur[ring] in the conclusion reached in" Chief Judge Boudin's opinion).  Here, the U.S. Attorney reasonably declined to divert agency resources and compromise a potential enforcement action by disclosing documents to plaintiff when plaintiff could have obtained the same documents for himself.  That the requested documents might also be protected under various privileges "is icing on the cake."  *Id.* at 73 (Boudin, C.J., concurring).

Plaintiff emphasizes (Br. 21-22) that DOJ executed a consent decree with the City and the Police Department in April 2022.  But the only agency action at issue is DOJ's denial of his *Touhy* request some two years earlier, and it is black-letter law that an APA claim must be assessed on the record before the agency at the time of its decision.  5 U.S.C. § 706 (directing that agency action be evaluated upon "the whole [administrative] record or those parts of it cited by a party"); *see Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).  As noted, DOJ has given additional information to the City in light of changed circumstances.  But the propriety of that more recent action is not before the Court in this APA challenge to the denial of a *Touhy* request in 2020.

## CONCLUSION

For these reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
   *General*

JOSHUA S. LEVY
   *Acting United States Attorney*

DANIEL TENNY

   */s/ Michael Shih*
MICHAEL SHIH
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7268*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 353-6880*
   *michael.shih@usdoj.gov*

June 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,413 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*/s/ Michael Shih*
MICHAEL SHIH

**SUPPLEMENTAL ADDENDUM**

**TABLE OF CONTENTS**

Plaintiff's *Touhy* Request (Dkt. No. 21-3) ............................................................. 1

U.S. Attorney's Denial of *Touhy* Request (Dkt. No. 21-3)................................. 6

Letter from Paul Killebrew, Civil Rights Div., DOJ, to John Payne, City
      Solicitor, City of Springfield (June 2, 2023) ......................................... 11



## COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE DISTRICT ATTORNEY
## HAMPDEN DISTRICT

SUPERIOR COURT
TEL: 413-747-1000
FAX: 413-781-4745

HALL OF JUSTICE
50 STATE STREET
SPRINGFIELD, MASSACHUSETTS 01102

SPRINGFIELD DISTRICT COURT
TEL: 413-747-1001
FAX: 413-747-5628

ANTHONY D. GULLUNI
DISTRICT ATTORNEY

August 19, 2020



Andrew E. Lelling,
United States Attorney - District of Massachusetts
United States Attorney's Office - District of Massachusetts
John Joseph Moakley United States Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210

RE: *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau,* **Department of Justice Report, dated July 8, 2020**

Dear United States Attorney Lelling:

I serve as Hampden District Attorney for the Commonwealth of Massachusetts. In that capacity, I am requesting the production of documents, pursuant to 5 U.S.C. *§ 301* and the prescribed regulations applicable to this request found at *28 C.F.R. § 16.21 et. seq.*, of certain Springfield Police Department reports [more specifically identified below] as named in the publicly released Department of Justice Report, dated July 8, 2020, entitled *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau* ["Report"], co-authored by the United States Department of Justice's Civil Rights Division and the United States Attorney's Office for the District of Massachusetts. It is asserted that any responsive records or papers are necessary for production to my office FORTHWITH to assist me in the exercise of my constitutional, statutory, and ethical obligations to the citizens of Hampden County, including, but not limited to, charged individuals in pending and post-conviction criminal matters in the courts of the Commonwealth.

"Ensuring the public's safety is of the first order of government, a duty underlying all government action." *Lavallee v. Justices in Hampden Superior Court*, 442 Mass. 228, 245 (2004). In the Commonwealth of Massachusetts, the District Attorney, by statute, is the governmental official who serves as chief law enforcement officer for his/her respective district. M.G.L., c. 12, §12. See *Commonwealth v. Bing Sial Ling*, 434 Mass. 131, 133 (2001), citing *District Attorney for the Norfolk Dist. v. Flatley*, 419 Mass. 507. 509 n.3 (1995) (recognizing district attorney's position as an elected official and chief law enforcement officer in his district by providing him extraordinary review of legal issues). The district attorney, as a prosecutor, is sworn to uphold the state and federal constitutions, and is required to disclose material, exculpatory evidence in his/her custody or control, to a defendant, *Committee for Pub. Counsel Servs. v. Attorney Gen.*, 480.

**USAO-010**

PAGE TWO
Lelling, A.
August 19, 2020

Mass. 700, 731 (2018); *Brady v. Maryland,*373 U.S. 83, 87 (1963), even without a request from the defendant. *Commonwealth v. Ayala,* 481 Mass. 46, 56 (2018). See *Commonwealth v. Bing Sial Ling,* 434 Mass. at 134-135, citing *United States v. Agurs,* 427 U.S. 97, 106-108 (1976) (prosecutors' duty to disclose exculpatory evidence not limited to cases where there is a request for such evidence); *Commonwealth v. Beal,* 429 Mass. 530, 531 (1999) (prosecutors' duty to disclose extends to information in their possession or in possession of persons subject to their control). See also Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518 (2004). "...[I]ssues of Federal and State sovereignty have the potential to prejudice a defendant being prosecuted in State court by stymying his or her ability to obtain exculpatory information held by Federal authorities.*" Commonwealth v. Ayala,* 481 Mass. at 56, citing *Commonwealth v. Donahue,* 396 Mass. 590, 596 (1986). In addition, ethical obligations "may require a prosecutor to undertake some procedural and remedial measures as a matter of obligation," in the exercise of his discovery obligations. Mass. R. Prof. C. 3.8, Special Responsibilities of a Prosecutor, 3.8 (d), (g), (i), and (j) and Comment 1.

The Springfield Police Department is a law enforcement agency within Hampden County. Officers of the Springfield Police Department are required by statute and rule to provide arrest, inciden, and investigatory reports to satisfy probable cause determinations before a magistrate or court. These reports are then provided to Hampden County prosecutors to fulfill discovery obligations. In addition, officers of the Springfield Police Department testify to the documents' content, under oath, in grand jury proceedings and pretrial and post-conviction evidentiary hearings of criminally charged individuals in Hampden Superior Court, Springfield District Court, and Springfield Juvenile Court.

The Executive Summary of the July 8, 2020 Report of the *Investigation of the Springfield, Massachusetts Police Department's Narcotics Bureau,* Report at 3, states that investigators jointly from the Department of Justice's Special Litigation Section of the Civil Rights Division and the United States Attorney's Office for the District of Massachusetts, conducted a comprehensive review of 114,000 pages of Springfield Police Department documents, including an unspecified number of "incident reports" and "investigative reports". Notably, Report at 9, the Report states that investigators sought and received 1,700 prisoner injury files, 26,000 arrest reports and over 700 use-of-force-reports created from 2013 through 2019. More specifically, Report at 9, the Report states that investigators reviewed 5,500 arrest reports and 10 use-of-force reports from the Springfield Police Department's Narcotics Bureau from 2013-2018. Found by investigators, Report at 2, were **"examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]"** and Report at 16, **"...a pattern or practice ... [where] officers made false reports that were inconsistent with other available evidence, including video and photographs...."** This information is deemed to have contributed to the investigators conclusion, Report at 2, that "there is reasonable cause to believe that Narcotics Bureau officers engage in a pattern or practice of

PAGE THREE
Lelling, A.
August 19, 2020

excessive force in violation of the Fourth Amendment of the United States Constitution."[1]

 After the Report was made public, a First Assistant District Attorney with my office received a telephone call from an AUSA with the Civil Rights Division of the United States Attorney's Office for the District of Massachusetts who had been involved in the investigation and issuance of the Report. The AUSA's stated purpose of the telephone call was to inquire if the Hampden District Attorney had "any questions" about the Report. The parties agreed to speak after my office had an adequate time to review the contents of the Report. On July 20, 2020, that First Assistant District Attorney from my office spoke with the AUSA, by telephone, and orally requested that the Hampden District Attorney be provided with the Springfield Police Department reports that investigators referenced in the Report where "officers falsified reports" or "officers made false reports". The First Assistant District Attorney told the AUSA that the assistant district attorneys in the Hampden District Attorney's Office needed to identify the false or falsified reports and review them to determine his/her discovery obligations, pursuant to *Brady* and the Massachusetts Rules of Criminal Procedure. The parties agreed to speak after the AUSA had sufficient time to consider the First Assistant District Attorney's request.

 On July 28, 2020, the First Assistant District Attorney left a voice message for the AUSA concerning the status of the July 20th request for the Springfield Police Department officers' false or falsified reports. Later in the day, the First Assistant District Attorney received an email from the AUSA stating that the request for the Springfield Police Department officers' false or falsified reports was still under consideration. Thereafter, on August 6, 2020, the First Assistant District Attorney, the AUSA and another AUSA (who participated in the investigation and issuance of the Report) spoke by telephone. In that telephone conversation, the First Assistant District Attorney's oral request for the production of the Springfield Police Department officers' false or falsified reports was denied. After discussion with members of the Department of Justice's Professional Responsibility Unit and the Civil Rights Division, the Department of Justice concluded it would withhold the Springfield Police Department's false or falsified reports from the Hampden District Attorney. The grounds stated were that the requested false or falsified reports were confidential, the calculus for exculpatory information was different for the Department of Justice, and rules for *Brady* material do not extend to the Department of Justice's civil rights investigations. The First Assistant

---

[1] While I recognize that the authors of the Report note that investigators did not serve "as a tribunal to make factual findings and legal conclusions binding on, or admissible in, any court" see Report at 2, n.2, the reported findings of unconstitutional law enforcement conduct, as described in the twenty-eight page Report, suggest the documents supporting these findings may contain potentially exculpatory material as that term is legally understood, and is subject to my mandatory review to effectively meet the constitutional, statutory and ethical obligations of my office.

   **USAO-012**

PAGE FOUR
Lelling, A.
August 19, 2020

District Attorney again emphasized to each AUSA that the Hampden District Attorney was only seeking the production of Springfield Police Department officers' false or falsified reports, not any confidential, privileged, or investigatory material. The First Assistant District Attorney was told to request the reports from the Springfield Police Department. The First Assistant District Attorney was also informed by the AUSA that the Springfield Police Department did not know which of the thousands of reports it had provided to federal investigators during the investigation were false or falsified, as stated in the Report.

    I understand that, in the first instance, due to the federal regulations cited above and relevant case law, see *U.S. ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951), a District Attorney's subpoena to produce documents, information or objects, pursuant to G.L. c. 277, § 68, or a state court summons to produce documents, information or objects, pursuant to Mass. R. Crim. P. 17 (a)(2), 378 Mass. 885 (1979), even if properly served, is legally insufficient to compel the production of the requested Springfield Police Department officers' reports, or attendant photographs or video/digital images, notwithstanding the language of the subpoena or summons, without prior administrative relief being sought.

    My office did not conduct or participate in the investigation with the Department of Justice's Specialized Litigation Unit of the Civil Rights Division or the United States Attorney for the District of Massachusetts and therefore, does not have knowing custody or control of the Springfield Police Department officers' reports deemed false or falsified. Although statutorily serving as the chief law enforcement officer for Hampden County, and thus the chief law enforcement officer within the Springfield Police Department's jurisdiction, the Hampden District Attorney was not served with a copy of the Report from the investigating agencies, and has not been enlisted to assist in developing necessary remedial measures for the constitutional violations found. The Report's investigation spanned twenty-seven months from its initiation to the release of its findings. The scope and timing of the investigation cannot be replicated by my office in any meaningful way so as to meet my constitutional, statutory, and ethical obligations in a timely manner.

    Therefore, I make this written request, pursuant to *28 C.F.R. § 16.21 et. seq.*, for:

(1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

PAGE FIVE
Lelling, A.
August 19, 2020

     (2) A copy of all Springfield Police Department reports, including, but not limited
        to incident reports, investigative reports, arrest reports, use-of-force reports, or
        contents of a "prisoner injury file" (as described in the Report, at 7), determined
        as "...a pattern or practice .... [where] officers made false reports that were
        inconsistent with other available evidence, including video and
        photographs....", and;
     (3) copy of all photographs, or video/digital material determined as inconsistent
        with any Springfield Police Department officers' reports, including, but not
        limited to incident reports, investigative reports, arrest reports, use-of-force
        reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

I do NOT request any other documents from the investigation, including any contents of
IIU files, training materials, or other internal, confidential or privileged documents of the
Springfield Police Department provided to investigators, or incident reports, investigative
reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as
described in the Report, at 7) determined not to contain false or falsified information, or
statements, notes or recordings of investigators' interviews with Springfield Police
Department officers, City of Springfield officials or community members. I also do not
request the disclosure of any information concerning sensitive investigative techniques,
current investigations, classified information, informants or security programs such as the
Federal Witness Security Program.

      Cooperation is sought for a quick resolution of this request, and is necessary for
me to meet my constitutional, statutory, and ethical obligations to the people I have been
elected to serve. As you know, seeking the truth and the pursuit of justice are the
bedrock principles of our work as prosecutors. If you have questions or concerns arising
from this office's need for this information, please contact me by telephone at (413) 505-
5901.

Very truly yours,

Anthony D. Gulluni
District Attorney
Hampden District

cc: Eric S. Dreiband, Assistant Attorney General
     Department of Justice, Civil Rights Division

**USAO-014**



**U.S. Department of Justice**

*Andrew E. Lelling*
*United States Attorney*
*District of Massachusetts*

---

Main Reception: (617) 748-3100

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

October 21, 2020

**VIA U.S. MAIL**

Anthony D. Gulluni
District Attorney
Hampden District
50 State Street
Springfield, MA 01102

     RE:    *Touhy Request – Investigation of the Springfield, MA Police Department's*
           *Narcotics Bureau, DOJ Report dated July 8, 2020*

Dear District Attorney Gulluni:

     This letter will serve as the formal response of the United States Attorney's Office for the District of Massachusetts ("USAO") to your correspondence dated August 19, 2020 and September 14, 2020 (the "*Touhy* Request"). The letters, submitted pursuant to the Department of Justice's ("DOJ") *Touhy* regulations, codified at 28 C.F.R. Part 16 Subpart B (§§ 16.21-16.29), seeks production of "Springfield Police Department officers' false or falsified reports," as referenced in the DOJ's July 8, 2020 report (the "Report").

     You requested that these documents be produced by September 30. We requested an extension, to which you kindly agreed. For the reasons that follow in this final agency decision, the USAO is unable to authorize disclosure of the materials sought in the *Touhy* Request.

**Applicable Regulations and Standards**

     As you are aware, the DOJ has promulgated regulations governing its response to a third-party request for the production of documents and information. *See* 28 C.F.R. §§ 16.21-16.29 ("*Touhy* regulations"). Specifically, in matters such as this where there is no proceeding and, therefore, the United States is not a party, the *Touhy* regulations prohibit current and former employees from disclosing "any material contained in the files of the Department" and "any information relating to or based upon material contained in the files of the Department," unless prior approval has been obtained from the proper Department official. 28 C.F.R. § 16.22(a). Section 16.22(d) further requires that a *Touhy* request for documents include "a summary of the information sought and its relevance to the proceeding."

District Attorney Anthony D. Gulluni
October 21, 2020
Page 2

The statutory authority for these regulations is found in the Federal Housekeeping Act, 5 U.S.C. § 301, which authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." *See United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Courts have recognized that an agency's *Touhy* regulations such as those promulgated by the Department of Justice serve the legitimate purpose of "conserve[ing] government resources when the United States is not a party to a lawsuit and to minimize government involvement in controversial matters unrelated to official business." *Demers v. Buonanno*, C.A. No. 12-676ML, 2012 WL 5930223, at *3 (D. Rhode Island Nov. 2, 2012) (citing *Boron Oil Co. v. Downie*, 873 F.2d 67, 73 (4th Cir. 1989)); *F.A.C., Inc. v. Cooperativa De Seguros De Vida*, 188 F.R.D. 181, 185 (D. Puerto Rico July 21, 1999) (same) (citing *Reynolds Metals Co. v. Crowther*, 572 F. Supp. 288, 290 (D. Mass. 1982)). Such regulations also serve to "centraliz[e] determinations [within the agency] as to whether subpoenas . . . will be willingly obeyed or challenged," thereby avoiding "the possibilities of harm from unrestricted disclosure in court." *Touhy*, 340 U.S. at 468.

The validity of these regulations has been consistently upheld by the United States Supreme Court and courts in numerous jurisdictions. *See, e.g., Touhy*, 340 U.S. at 468 (upholding the FBI's refusal to produce documents sought in a subpoena); *Hasie v. Office of the Comptroller of the Currency of the United States*, 633 F.3d 361 (5th Cir. 2011); *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *In re Elko County Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997); *Edwards v. United States Dept. of Justice*, 43 F.3d 312, 316-317 (7th Cir. 1994); *Solomon v. Nassau County*, 274 F.R.D. 455, 457 (E.D.N.Y. 2011). In fact, agency housekeeping regulations are accorded the full force and effect of federal law, and a court lacks the authority to compel compliance with a subpoena or other request where such compliance is not authorized pursuant to such regulations. *See Touhy*, 340 U.S. at 468.

The submitted *Touhy* Request appears to have complied with the procedural requirements of 28 C.F.R. § 16.22 for seeking the approval of the relevant Department official for the documents sought and, pursuant to § 16.24, the USAO is tasked with responding to the *Touhy* Request. Production generally is authorized only if the request comports with § 16.26(a) and if none of the factors specified in § 16.26(b) exists with respect to the requested disclosure. 28 C.F.R. § 16.24.

Section 16.26(a) directs Department officials to consider whether the disclosure "is appropriate under the rules of procedure governing the case or matter in which the demand arose," as well as whether it "is appropriate under the relevant substantive law of privilege." Section 16.26(b), in turn, precludes disclosure where any of six enumerated factors exist. Such factors include where "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." 28 C.F.R. § 16.26.

**The Touhy Request At Issue**

The *Touhy* Request seeks three categories of documents from the USAO:

     **USAO-002**

District Attorney Anthony D. Gulluni
October 21, 2020
Page 3

   (1) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as examples where Narcotics Bureau officers falsified reports to disguise or hide their use of force[;]";

   (2) A copy of all Springfield Police Department reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7), determined as " . . . a pattern or practice . . . [where] officers made false reports that were inconsistent with other available evidence, including video and photographs . . .", and

   (3) A copy of all photographs or video/digital material determined as inconsistent with any Springfield Police Department officers' reports, including, but not limited to incident reports, investigative reports, arrest reports, use-of-force reports, or contents of a "prisoner injury file" (as described in the Report, at 7).

In response, pursuant to 28 C.F.R. § 16.26(a)(2) and (b)(5), the USAO declines to authorize production of these documents.

  1.  <u>The Requested Information Is Privileged</u>

The *Touhy* Request seeks "all Springfield Police Department Reports . . . *determined* as examples where Narcotics Bureau officers falsified reports" and photographs and videos "*determined* as inconsistent with any Springfield Police Department officers' reports." *Touhy* Request, Aug, 19, 2020, at 4-5 (emphasis added). The documents sought are subject to the work product and law enforcement privileges and are not appropriate for disclosure under 28 C.F.R. § 16.26(a)(2) and (b)(5).

A request for privileged information is beyond the scope of matters that can be released under 28 C.F.R. § 16.26(b). Disclosure is not appropriate for any information that would violate a statute, regulation, court order, such as a sealing order, or rule of procedure, such as the grand jury secrecy rule (Fed. R. Crim. P. 6(e)), or any privileged or classified information. Privileged information includes, but is not limited to, the following:

    a.    Disclosures that would reveal the internal deliberation process within the Department of Justice, including the FBI, the Drug Enforcement Administration, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the U.S. Attorney's Office, and other agencies;

    b.    Privileged attorney-client communications;

    c.    Disclosures that would reveal attorney work product;

    d.    Disclosures of information that would threaten or endanger the lives or safety of any individual; and

USAO-003

District Attorney Anthony D. Gulluni
October 21, 2020
Page 4

    e.    Disclosures that could interfere with ongoing criminal investigations or prosecutions, or reveal investigative or intelligence gathering and dissemination techniques, the effectiveness of which would thereby be impaired.

First, the documents sought are subject to the work product privilege because they reflect the thoughts and impressions of DOJ attorneys, paralegals, and investigators. "Work product that contains 'opinions, judgments, and thought processes of counsel' receives nearly absolute protection from discovery and must be produced only if the party seeking the work product shows an 'extraordinary justification.'" *Cavanaugh v. Wainstein*, 2007 U.S. Dist. LEXIS 40242, at *26 (D.C. Cir. June 4, 2007) (*quoting In re Sealed Case*, 676 F.2d 793, 809-10 (D.C. Cir. 1982).

Here, there is no "extraordinary justification." As prosecutors, we are sympathetic to the need you expressed in your letter "to meet my constitutional, statutory, and ethical obligations" regarding disclosure of information about police misconduct. As you note in your August 19 letter (p. 3, FN 1), however, the thoughts and impressions of USAO and DOJ employees contained in the Report do not amount to "factual findings and legal conclusions binding on, or admissible in, any court." See also Report at 2, FN 2. As such, these mental impressions are protected from disclosure.

Second, this Office has determined that the documents sought are subject to the law enforcement privilege because they would reveal investigative records compiled in connection with an open and ongoing civil investigation. Consequently, disclosure of the requested materials would reveal records compiled for investigative purposes and would interfere with these ongoing law enforcement proceedings.

2.  The Requested Information Belongs To The Springfield Police Department

The *Touhy* Request seeks "all Springfield Police Department reports" including incident reports, investigative reports, arrest reports, and use-of-force reports. The requested documents belong to and originated with the Springfield Police Department (SPD). SPD produced these documents to the USAO pursuant to a confidentiality agreement as part of our civil pattern or practice investigation. Because these documents are available from SPD – a department with which your office likely works daily – they should not be sought from the USAO.

For these reasons, the USAO declines to disclose the information sought by the *Touhy* Request.

**Final Agency Decision**

After carefully considering your request, applying all of the above factors, and reviewing the relevant procedural and substantive law, I have determined that your requests are improper under the applicable substantive and procedural requirements. Therefore, I do not authorize the disclosure of the official information that you have requested.

District Attorney Anthony D. Gulluni
October 21, 2020
Page 5

      The forgoing constitutes the final agency decision of the USAO in response to the *Touhy* request. You have the right to seek judicial review of this decision in the federal district court pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*

      If you have further questions, please do not hesitate to contact Assistant United States Attorney Jennifer A. Serafyn at (617) 748-3188, or Jennifer.Serafyn@usdoj.gov.

                  Sincerely,

                  Andrew E. Lelling
                  United States Attorney

cc:    Jennifer A. Serafyn, AUSA



**U.S. Department of Justice**

Civil Rights Division

United States Attorney's Office
*District of Massachusetts*

---

*United States Attorney's Office*          *Special Litigation Section - PHB*
*1 Courthouse Way, Suite 9200*              *950 Pennsylvania Ave, NW-RFK*
*Boston, MA 02210*                          *Washington, DC  20530*

June 2, 2023

<u>Via Electronic Mail</u>

John Payne
City Solicitor
City of Springfield
City Hall
36 Court St
Springfield, MA 01103
jpayne@springfieldcityhall.com

Dear Mr. Payne:

　　We are aware that, at the request of the Hampden District Attorney's Office, your office has attempted to identify the incidents discussed in the U.S. Department of Justice's July 2020 report (DOJ report) summarizing its investigation of the Narcotics Bureau of the Springfield Police Department (SPD).  Your office's efforts are memorialized in a letter dated July 2, 2021, from City Solicitor Edward Pikula to Hampden District Attorney's Office First Assistant Jennifer Fitzgerald.  With the Consent Decree in place and the parties working diligently to implement its terms, we are writing to provide your office with additional information relevant to those efforts.

　　With respect to nineteen incidents discussed in the DOJ report (items 1–13, 16–18, and 21–23 in your July letter), we confirm that your letter correctly identified the incidents in question.  Appendix A to this letter lists all documents related to those incidents that SPD gave the Department of Justice during the investigation.  We have also identified three incidents (items 14, 15, and 20 in your July letter) that you stated you could not identify.  Appendix B lists all documents related to those incidents that SPD gave the Department of Justice.  Finally, we have identified 14 incidents not referenced in your July letter that involved discrepancies between photographs and written reports, which formed the basis of the subsection of the report titled "Narcotics Bureau officers submit reports with inaccurate or falsified information." Appendix C lists all documents related to those incidents that SPD gave the Department of Justice.  SPD may have additional documents and information pertaining to all of these incidents that were not provided to the Department of Justice.  Additionally, the information we are providing does not necessarily represent the entirety of relevant information on any particular incident, and likewise does not represent the entirety of information the Department of Justice considered to determine whether a particular incident violated the Constitution.

　　The July 2020 report also made several findings about SPD's practices in general.  These findings, by their nature, were not tied to specific identified documents but instead reflected the Department of Justice's review of all the documents supplied by SPD, as well as information received from SPD officers and employees, Springfield officials, members of the public, and

**Supp. Add. 11**

consultations with law-enforcement experts. We have thus not endeavored to identify particular SPD documents corresponding to these findings. We note, however, that all of the SPD documents that the Department of Justice reviewed in the course of its investigation were provided to the Department by SPD and are therefore already in SPD's possession.

Finally, we wish to highlight three additional considerations. First, the Department of Justice's investigation assessed whether there was a pattern or practice of conduct by Springfield officers that deprived individuals of rights protected by the Constitution. Where we identified incidents in which officers deprived people of their rights, we considered whether each incident was part of a pattern or practice of conduct. We did not separately assess whether the officers were individually culpable for those violations. Second, in using this information, SPD must carefully guard against the potential for retaliation against witnesses and complainants. Third, in providing these documents, we express no view on their relevance to any disclosure obligations (including *Brady* or *Giglio* obligations) that the Hampden District Attorney's Office may have.

Please do not hesitate to contact me if I can provide any assistance on this matter.

Sincerely,

*/s/ Paul Killebrew*

Paul Killebrew
Deputy Chief
Special Litigation Section
Civil Rights Division

2

**Supp. Add. 12**

**Note:** All of the appendices list the File Names and File Paths of the documents as provided to us by SPD. We have replaced personally identifiable information with ellipses. For Prisoner Injury (PI) reports that did not have a numerical identifier, we also have included the associated Arrest Report (AR) number. Arrest Reports were located in SPD's Arrest Report database.

## APPENDIX A

| Pikula letter | Findings Report | File name(s) | File path(s) |
|---|---|---|---|
| Incident #1 | Pages 2,3 | SO# 18-239 Invst. Indictment of ...pdf | Incoming Production\SPD\20190702\IIU Files |
| | | 098 PI ... 02-16.pdf | 20180\00 Initial Documents\SO# 2018 |
| | | PIE#16 -09.pdf; 16-647-AR | Incoming Production\20180824\SIU Prisoner |
| | | SO# 16-035 Invst RPT ... PD.pdf | Injury 2015_2016 Resp to Item No_9 |
| | | | Incoming Production\SPD\20190510\IIU Files |
| | | | 2016\00 Initial Documents\My Disc\PIE# 2016 |
| | | | Incoming Production\SPD\20190510\IIU Files |
| | | | 2016\00 Initial Documents\My Disc\SO# 2016 - 1 |
| Incident #2 | Page 5 | SO # 15-083.pdf | Incoming Production\SPD\20190410\IIU Files |
| | | | 2015\00 Initial Documents\My Disc\SO# 2015 - 1 |
| Incident #3 | Page 6 | MassLive article, available at https://www.masslive.com/news/2017/05/follow_the_m oney_from_missing.html | |
| Incident #4 | Page 12 | 037 PI ... 1 2015.pdf | Incoming Production\20180824\SIU Prisoner Injury 2015_2016 Resp to Item No_9 |
| Incident #5 | Page 12 | 19-2409-AR PI ... 7 2019; 19-2408-AR | Incoming Production\SPD\20200131\Disc 2 - Prisoner Injury Reports 2019 First Names A-L Incoming Production\SPD\20200131\Disc 2 - Prisoner Injury Reports 2019 First Names A-L |
| Incident #6 | Page 13 | 049 PI ... 08-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| Incident #7 | Page 13 | 063 PI ... 9 2015.pdf | Incoming Production\20180824\SIU Prisoner Injury 2015_2016 Resp to Item No_9 |
| Incident #8 | Page 14 | IMG_8506 (1).mov | Incoming Production\20180905\SO_16_215 Audio and Video\Store video taken by Officer ... |

Supp. Add. 14

| Incident # | Page | | |
|---|---|---|---|
| Incident #9 | Page 14 | 052 PI ... 03-13.pdf SO#13-031.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 / Incoming Production\20181005\01_Documents\Phase V DOJ Disc 01\Phase V DOJ Disc 01\Multiple SO Reports 2013 and 2014 |
| Incident #10 | Page 14 | 040 PI ... 10 2015.pdf | Incoming Production\20180824\SIU Prisoner Injury 2015_2016 Resp to Item No_9 |
| Incident #11 | Page 15 | PI ... 7 2018.pdf; 18-2458 AR | Incoming Production\SPD\20190225\Phase II Disc 02 of 03 |
| Incident #12 | Page 16 | 17-305-AR | Arrest Reports |
| Incident #13 | Page 16 | 02-09-2018 392...; 18-392-AR | Arrest Reports |
| Incident #16 | Page 18 | 052 PI ... 03-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| Incident #17 | Page 18 | 139 PI ... 03-14.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| Incident #18 | Page 18 | 131 PI ... 06-16.pdf IMG_8506 (1).mov | Incoming Production\20180824\SIU Prisoner Injury 2015_2016 Resp to Item No_9 / Incoming Production\20180905\SO_16_215 Audio and Video\Store video taken by Officer ... |
| Incident #19 | Page 18 | No incident reports cited. | |
| Incident #21 | Page 20 | SO_18_051.pdf | Incoming Production\20180928\01_Documents\01_Documents\Phase IV DOJ Disc 01\Disc 1\SO_18_051 ... |
| Incident #22 | Page 23 | Pie #15-40.pdf | Incoming Production\20181005\01_Documents\Phase V DOJ Disc 01\Phase V DOJ Disc 01\Multiple PIE Reports 2015 and 2016 |
| Incident #23 | Page 24 | Investigative Report SO 16_035.pdf | Incoming Production\20180905\SO_16_035 Juvenile Stolen Vehicle |

## APPENDIX B

| Pikula letter | Findings Report | File name(s) | File path(s) |
|---|---|---|---|
| Incident #14 | Page 17 | 021 PI ... 01-13.pdf<br>051 PI ...10 2013-.pdf<br>015 PI ... 6 2015.pdf<br>045 PI ... 7 2015.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No._9<br>Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No._9<br>Incoming Production\20180824\SIU Prisoner Injury 2015_2016 Resp to Item No._9<br>Incoming Production\20180824\SIU Prisoner Injury 2015_2016 Resp to Item No._9 |
| Incident #15 | Page 17 | 062 PI ... 05-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No._9 |
| Incident #20 | Page 20 | SO #16-016.pdf | Incoming Production\20180928\01_Documents\01_Documents\Phase IV DOJ Disc 05\Multiple SO Reports 2015 and 2016 |

# APPENDIX C

| | File Name | File Path |
|---|---|---|
| 1 | 021 PI ... 01-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 2 | 030 PI ... 07-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 3 | 036 PI ... 01-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 4 | 041 PI ... 10 2013.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 5 | 051 PI ... 10 2013.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 6 | 052 PI ... 03-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 7 | 058 PI ... 05-13.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 8 | 097 PI ... 12-14.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 9 | 102 PI ... 12-14.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 10 | 139 PI ... 03-14.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 11 | 037 PI ... 1 2015.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 12 | 040 PI ... 10 2015.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 13 | 119 PI ... 08-16.pdf | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |
| 14 | PI 7 2018.pdf; 18-2458 AR | Incoming Production\20180824\SIU Prisoner Injury 2013_2014 Resp to Item No_9 |